IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CT-03343-M

| | | |
|---|---|---|
| RICHARD PRIDGEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SHANTICIA HAWKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This cause is before the court on defendants' pending motion for summary judgment. Mot. [D.E. 47]. For the reasons discussed below, the court denies the motion.

Relevant Procedural History:

On November 10, 2021, Richard Pridgen ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 8].

Plaintiff generally alleges violations of his constitutional rights, the Americans with Disabilities Act, and the "Nelson Mandella rules [sic]" at Warren C.I. from December 2, 2020, to the present. See Compl. [D.E. 1] at 8. Plaintiff names as defendants: Warden Shanticia Hawkins; Associate Warden Shirley Bennett; Unit Manager Kimberly Harris; Assistant Unit Manager Ashton Reams ("Reams"); Associate Warden of Programs Cristel Vaughan; Supervising Nurse Caroline Flemming; Supervising Nurse L. Mosley; Correctional Officer ("C.O.") Rainey ("Rainey"); and C.O. Durham ("Durham"). Id. at 4–6. For relief, plaintiff seeks, *inter alia*, monetary damages and both injunctive and declaratory relief. Id. at 13.

On June 3, 2022, the court conducted its initial review, allowed an Eighth Amendment excessive force claim to proceed against Rainey and Durham as to a use-of-force incident on

December 2, 2020, but dismissed the remaining claims and dismissed without prejudice Hawkins, Bennett, Harris, Reams, Vaughan, Flemming, and Mosley as defendants. Order [D.E. 15]. Also on that date, a request for waivers issued as to Rainey and Durham. See [D.E. 16].

On June 22, 2022, plaintiff moved for leave to file a supplemental complaint and attached a proposed supplemental complaint. See Mot. [D.E. 17], Mot. Attach. [D.E. 17-1].

Plaintiff's supplemental complaint generally alleges violations of his constitutional rights at Warren C.I. from December 2, 2020, until the present, re-names as defendants Hawkins, Bennett, Reams, Flemming, Mosley, and newly names as defendants Dr. Clifford Curtis, Dr. Joseph M. Lightsey, Health Care Provider Mr. Adegoke, Supervising Nurse D. Harris, registered nurses Halloway, Fields, Riley, and Pasco, Unit Manager Christina Barber, Assistant Unit Manager Joyce Brown, C.O. Sergeant McCoy, C.O. Sergeant Edwards, C.O. Captain Smith, and C.O. Captain Pittman. See Suppl. Compl. [D.E. 17-1] at 2–11. For relief, plaintiff seeks, *inter alia*, monetary damages and injunctive relief. Id. at 23. Plaintiff later mailed an additional page that the court added to the proposed supplemental complaint. See [D.E. 18], [D.E. 17-3].

On August 1, 2022, Durham filed a waiver of service [D.E. 21], and summons issued as to Rainey (then misidentified as C.O. Cameron K. Durham) at an address under seal, see [D.E. 23].

On September 13, 2022, plaintiff filed a motion to appoint counsel, Mot. [D.E. 25], together with a declaration in support, Pl.'s Decl. [D.E. 25-3].

On September 23, 2022, the N.C. Attorney General's Office filed a corrected response to the request for waiver of service. See [D.E. 30] (confirming the identity of the defendant previously misidentified as C.O. Cameron K. Durham as Cameron K. Rainey). Subsequently, the N.C. Attorney General's Office filed under seal an updated address for Rainey. [D.E. 38].

2

On September 30, 2022, Durham answered the complaint.    [D.E. 33].

On December 2, 2022, the court: denied the motion to appoint counsel; granted the motion for leave to file a supplemental complaint; allowed an excessive force claim to proceed against Reams as to the December 2, 2020, incident, but dismissed the other claims; dismissed without prejudice Hawkins, Bennett, Dr. Curtis, Dr. Lightsey, Flemming, Mosley, Barber, Vaughan, Edwards, Smith, Pittman, Adegoke, D. Harris, Halloway, Fields, Riley, Pasco, McCoy, and Brown as defendants; directed the U.S. Marshals Service to serve Rainey at the address under seal; and directed the clerk to continue management of the action under Standing Order 14-SO-02 as to Reams.    Order [D.E. 39].    The court then reissued summons as to Rainey.    See [D.E. 40, 42].

On January 5, 2023, Rainey and Reams answered the complaint.    [D.E. 45].

On April 5, 2023, Durham, Rainey, and Reams (collectively, "defendants"), filed a motion for summary judgment, Mot. [D.E. 47], a memorandum in support [D.E. 48], a statement of material facts [D.E. 49], and an appendix [D.E. 50].    Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about this motion for summary judgment, the consequences of failing to respond, and the response deadline.    [D.E. 51].

After the court granted plaintiff an extension of time, see [D.E. 52, 53], plaintiff filed a response in opposition to defendants' motion for summary judgment [D.E. 54], with a memorandum of law [D.E. 55], a statement of material facts [D.E. 56], and an appendix [D.E. 57].

On January 17, 2024, the court directed defendants to provide any available video evidence of the relevant December 2, 2020, use-of-force incident.    Order [D.E. 58].

On January 31, 2024, defendants, by and through the N.C. Attorney General's Office, timely filed a status report indicating that no video evidence of this incident exists.    [D.E. 60].

3

Factual Disputes:

As noted below, the facts are disputed. On December 2, 2020, circa 11:20 a.m., Rainey and Durham distributed lunches in Granville Dorm C-block, but the parties dispute the type of lunch and why plaintiff, who then was in COVID-19 quarantine, did not receive a lunch.[1] Compare Defs.' Stmt. Mat. Facts [D.E. 49] at ¶5, with Pl.'s Stmt. of Mat. Facts [D.E. 56] at ¶5.

After distribution concluded, plaintiff came to the cellblock door seeking a lunch, Durham told him lunch was no longer available and, although the parties dispute whether he made verbal threats, Durham and Rainey entered the cellblock and escorted him into the hallway.[2] Compare Defs.' Stmt. Mat. Facts [D.E. 49] at ¶¶5, 7, with Pl.'s Stmt. of Mat. Facts [D.E. 56] at ¶¶5, 7.

---

[1] Durham and Rainey declare, *inter alia*: "During food service, a food cart is rolled into the block, offenders are notified that food is present, and offenders are expected to come and pick up their food while it is available"; "We followed this standard practice on December 2, 2020 and made several announcements regarding food availability, including a last call for food trays"; "As we made these announcements, [we] observed [plaintiff] sitting in the day room by himself"; plaintiff "did not make any effort to come and obtain a food tray" but "offenders sitting around [him] in the day room got up, walked over to receive their food, and brought their food back to the dayroom where they were eating food while sitting around" plaintiff; plaintiff "never got up to obtain food when he was notified that food was available"; and, after last call for food trays, the food was removed from the block and food services picked up the cart. Defs.' App., Rainey Decl. [D.E. 50-8] at ¶¶11–20, Durham Decl. [D.E. 50-11] at ¶¶9–18. Plaintiff declares, *inter alia*: he was transferred to COVID-19 quarantine in Granville Dorm 48 hours prior to this incident; he was "sick in the bathroom before, during, and minutes after the [BROWN BAG] lunch was being distributed [sic]"; and he "was not in view of any custody or administrative staff during lunch feeding time." Pl.'s Decl. [D.E. 54-1] at ¶¶4–5, 10–11.

[2] Durham and Rainey declare, *inter alia*: approximately ten minutes after they removed food from the cellblock, plaintiff came to the cellblock door "agitated and upset"; plaintiff began swearing at, cursing at, and threatening Durham; plaintiff specifically told Durham, "I'll get you as soon as you come back in the block"; Durham notified Unit Manager Reams that plaintiff had threatened him; Reams informed Durham that Durham was "permitted to remove [plaintiff] from the cellblock and bring him to segregation for threatening a correctional officer"; under COVID-19 protocol, Rainey and Durham "put on Personal Protective Equipment, including face masks and gowns," entered the cellblock to remove" plaintiff; and they brought plaintiff into the hallway "in an effort to talk to [plaintiff] and deescalate the situation." See Defs.' App., Rainey Decl. [D.E. 50-8] at ¶¶21–27, Durham Decl. [D.E. 50-11] at ¶¶19–25. Reams declares, *inter alia*: during lunch period on Dec. 2, 2020, he was approached by Durham and Rainey who informed Reams that plaintiff had threatened Durham; Durham and Rainey inquired whether they could place an offender on COVID-19 restrictions into restrictive housing; Reams he told Durham and Rainey that offenders causing disciplinary issues could be placed in restrictive housing; following this conversation, Durham and Rainey returned to the unit to remove plaintiff and place him in restrictive housing; and Reams was in the hallway outside the unit and observed plaintiff verbally threatening Durham. Id., Reams Decl. [D.E. 50-6] at ¶¶7–13. Plaintiff, by contrast, declares that he "did not threaten anyone to include staff" on the date in question. Pl.'s Decl. [D.E. 54-1] at ¶13.

4

The parties also dispute whether defendants knew of plaintiff's handcuffing restrictions or medical issues,[3] if plaintiff ignored orders to submit to handcuffs,[4] whether plaintiff extended his hands for cuffing or "took a fighting posture,"[5] if defendants had safety concerns due to plaintiff's actions,[6] and whether Rainey first attempted to subdue plaintiff with "OC spray."[7]  Compare Defs.' Stmt. Mat. Facts [D.E. 49] at ¶¶5–9, with Pl.'s Stmt. of Mat. Facts [D.E. 56] at ¶¶5–9.

_____

[3] Plaintiff declares that he was nine months post-operative for a chest tumor removal and medically incapacitated due to COVID-19 and, despite being hearing impaired, he was not wearing hearing aids because they had been confiscated in Nov. 2019.  Pl.'s Decl. [D.E. 54-1] at ¶¶4–8.  Plaintiff states his handcuffing restrictions were "medically documented before and long after" the incident, and Reams "was responsible for obtaining plaintiff['s] medical restrictions [b]efore the use of excessive force was initiated [sic]."  Pl.'s Stmt. Mat. Facts [D.E. 56] at ¶6–7.  Rainey declares that: prior to Dec. 2, 2020, Rainey had only known plaintiff "for approximately four to five months," and they had limited personal interaction; Rainey "did not regularly work in [plaintiff's] dormitory"; he "knew nothing about [plaintiff's] medical situation" and "was not aware of any medical limitations that [plaintiff] possessed"; and plaintiff "was moved to Granville dormitory approximately one week before the incident."  Defs.' App., Rainey Decl. [D.E. 50-8] at ¶¶4–8.  Reams and Durham both declare, prior to Dec. 2, 2020, they had limited personal interaction with plaintiff, they "knew nothing about [plaintiff's] medical situation," and they were "not aware of any medical limitations that [plaintiff] possessed."  Id., Durham Decl. [D.E. 50-11] at ¶¶6–8; Reams Decl. [D.E. 50-6] at ¶¶4–6.

[4] Durham, Rainey, and Reams all declare that Rainey gave plaintiff "numerous orders and directives to submit to handcuffs, all of which [plaintiff] refused to comply with."  Defs.' App., Reams Decl. [D.E. 50-6] at ¶14, Rainey Decl. [D.E. 50-8] at ¶¶24–27, Durham Decl. [D.E. 50-11] at ¶27.  Plaintiff declares he "did not hear any multiple directives to submit to being restraint [sic]."  Pl.'s Decl. [D.E. 54-1] at ¶15.  Plaintiff also states that, because he was not wearing hearing aids, he "was unable to clearly understand any repeated directives to be restraint [sic], in which [sic] he thought he was being provided with his [p]ackout [sic]."  Pl.'s Stmt. Mat. Facts [D.E. 56] at ¶5.

[5] Reams declares that plaintiff got in the faces of Rainey and Durham, balled up his fists, and took a step back.  Defs.' App., Reams Decl. [D.E. 50-6] at ¶¶15–17.  Durham, Rainey, and Reams all declare that plaintiff "took a bladed stance, which [they knew] from training and experience to be an indicator that an offender intends to fight."  Id., Reams Decl. [D.E. 50-6] at ¶17, Rainey Decl. [D.E. 50-8] at ¶29, Durham Decl. [D.E. 50-11] at ¶26.  Plaintiff, by contrast, disputes that he took a "fighting posture," references his hearing disability, and states that, "upon understanding what was being said to him[,] plaintiff slowly put his hands in front of him to be restraint [sic] to be taken to Segregation for reasons unknown to plaintiff."  Pl.'s Stmt. Mat. Facts [D.E. 56] at ¶7.

[6] Reams declares plaintiff began moving towards Durham and Rainey in a "fighting stance."  Defs.' App., Reams Decl. [D.E. 50-6] at ¶18.  Durham and Rainey declare plaintiff "was standing face to face with" Rainey and Durham, "pulled his mask down from his face and continued yelling at" them, and then "charged" at them, which made them concerned for their safety.  Id., Rainey Decl. [D.E. 50-8] at ¶¶31–34, Durham Decl. [D.E. 50-11] at ¶¶28–29.  Plaintiff declares that he "was not medically able to assume to be aggressive [sic]."  Pl.'s Decl. [D.E. 54-1] at ¶14.

[7] Rainey and Reams both declare that Rainey attempted to use OC spray, but Rainey's COVID-19 personal protective equipment prevented him from removing the OC spray from his belt holster.  Defs.' App., Rainey Decl. [D.E. 50-8] at ¶35; Reams Decl. [D.E. 50-6] at ¶19.  Plaintiff states, "for at no time as [plaintiff] was directly in front of [ ] Rainey did he attempt to deploy his OC spray to subdue the plaintiff [sic]."  See Pl.'s Stmt. Mat. Facts [D.E. 56] at ¶9.

5

Rainey took plaintiff to the ground and, with the assistance of Durham and Reams, gained control over plaintiff and applied restraints, but the parties disagree whether the force used was reasonable or excessive.[8]   Compare Defs.' Stmt. Mat. Facts [D.E. 49] at ¶¶5, 10–13, with Pl.'s Stmt. of Mat. Facts [D.E. 56] at ¶¶10–13.

Plaintiff subsequently was seen for a use-of-force assessment and then was taken for outside treatment at a hospital emergency room.[9]   See Pl.'s Stmt. of Mat. Facts [D.E. 56] at ¶10.

---

[8] Plaintiff states, inter alia: after seeing a video recording, Captain Pittman, the officer in charge, told plaintiff, "that was excessive force, that was excessive force" and ordered an "excessive force exam"; his injuries are inconsistent with being "placed gently on the ground" as his ribs were "damaged"; a video recording will show "what really occurred"; and that, "at no time in regards to plaintiff was there a need to maintain order and discipline."   See Pl.'s Stmt. Mat. Facts [D.E. 56] at ¶¶10–13.   Plaintiff declares, inter alia: he "did absolutely nothing to anyone to warrant [him] being slammed with brute force on [his] back"; he "only wanted to eat"; and he "thought defendants were going to kill" him.   Pl.'s Decl. [D.E. 54-1] at ¶¶16–18.   Plaintiff elsewhere declares, inter alia: he "was subjected to the misuse of force by several correctional officers in which he sustained serious injuries, as one lifted him in the air, off both of his feet, then slammed him with excessive force on his back onto a hard and solid concrete floor, causing the plaintiff's neck to simultaneously snap backward with brute force, as the other two officers pounced on his chest that is currently healing from a major surgical procedure performed on him nine months prior to him being assaulted and battered [sic]."   Pl.'s Decl. [D.E. 25-3].   Rainey declares, inter alia, "In order to prevent [plaintiff] from attacking [Rainey] and Officer Durham, [Rainey] physically grabbed [plaintiff] in a bearhug, off-balanced him, and lay down to the ground – bringing both [plaintiff and Rainey] to the floor of the hallway"; as Rainey "held on to" plaintiff, Durham and Reams "assisted in securing [plaintiff], handcuffing [plaintiff], and taking [plaintiff] for a medical evaluation"; and Rainey "never punched, kicked, or hit" plaintiff.   Defs.' App., Rainey Decl. [D.E. 50-8] at ¶¶6–42.   Durham declares, inter alia: he helped Rainey secure plaintiff in handcuffs; Durham "only touched [plaintiff] when he was being handcuffed"; Durham "never punched, kicked, or hit" plaintiff; and, in Durham's "personal and professional opinion, Officer Rainey employed the minimal amount of force necessary to control the situation."   Id., Durham Decl. [D.E. 50-11] at ¶¶6–38.   Reams declares, inter alia: Rainey "took control of plaintiff by the waist and "placed him on the ground"; plaintiff refused orders to submit to handcuffs and continued to fight when brought to the ground; Rainey held onto plaintiff while Durham and Reams secured handcuffs; and Reams never punched, kicked, or hit plaintiff.   Id., Reams Decl. [D.E. 50-6] at ¶¶21–26.   Defendants all declare: after the use-of-force incident, they each prepared statements; they "maintained a firm, fair, and professional demeanor with" plaintiff; they take "care and effort to ensure that every inmate is treated with fairness and dignity"; "all State and Federal laws are adhered to within any facility"; and they "work hard to treat all inmates with the same respect [they] would want any of [their] family or friends to receive if they were incarcerated."   See id., Reams Decl. [D.E. 50-6] at ¶¶27–30, Rainey Decl. [D.E. 50-8] at ¶¶39–42; Durham Decl. [D.E. 50-11] at ¶¶35–38.

[9] See Pl.'s App., Ex. 7 [D.E. 51-1] at 78–80 (Dec. 2, 2020, ER medical record noting: plaintiff's subjective complaints of right side back pain and right neck tenderness after he was "assaulted" by the prison guards when he was "thrown to the ground" and a "knee was placed in his back"; a finding of tenderness to palpation in the back and right chest wall; that plaintiff received X-rays of his ribs with chest for a history of "rib, hip, lower back pain status post the blunt trauma," but finding no fracture; and that plaintiff was diagnosed with a "rib injury."); id., Ex. 7A, [D.E. 51-1] at 87 (Dec. 3, 2020, UR request for lidocaine patch prescribed for low back pain during plaintiff's ER visit one day prior).

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

First, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment unless the state has waived immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Because North Carolina has not waived immunity, defendants are entitled to summary judgment on his official capacity claims. See Anderson, 477 U.S. at 249.

Next, an Eighth Amendment excessive force claim requires a showing that "the officials act[ed] with a sufficiently culpable state of mind" and "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8

7

(1992) (quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (citation omitted). Factors for whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)); see also Brooks, 924 F.3d at 113 (noting the "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason.").

The court presumes that plaintiff's injuries satisfy this claim's objective component. See Pl.'s App., Ex. 7 [D.E. 51-1] at 78–80; Ex. 7A [D.E. 51-1] at 87, 91; see also Iko, 535 F.3d at 238 (noting even a "minor" injury can be actionable if it "rises above the level of [de minimis] harm").

As to this claim's subjective component, viewing the evidence and inferences in the light most favorable to plaintiff, Scott, 550 U.S. at 378, issues of material fact preclude entry of summary judgment because a reasonable jury could infer defendants' use of force was excessive.

Finally, because there are genuine issues of material fact as to whether defendants' use of force violated plaintiff's clearly established rights under the Eighth Amendment, defendants also are not entitled to a finding of qualified immunity on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–56 (2014).

Conclusion:

Accordingly, the court: GRANTS IN PART defendants' motion for summary judgment [D.E. 47] as to the official capacity claims but DENIES this motion as to the excessive force claims. The court REFERS the case to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed concerning the settlement conference, and the date on which it will be held. The court also APPOINTS North Carolina Prisoner Legal Services, Inc. ("NCPLS") for the limited purpose of assisting plaintiff in the court-hosted settlement conference. See Standing Order 21-SO-11 at ¶7.

SO ORDERED this __5th__ day of February, 2024.

RICHARD E. MYERS II
Chief United States District Judge

9